PETER McLAREN, plaintiff in error, vs. BIRDSONG & SLEDGE, defendants in error.

[1.] A juror who states in Court to the presiding Judge, that he is afraid he cannot do one of the parties justice, and the party proposes to swear him, but the Court decides him to be competent without, is an incompetent juror.

[2.] A cause may go to trial on the petition and answer. An issuable plea may go to the jury as answer to the plaintiff's case in the petition—and the plaintiff need not join issue thereon.

[3.] A proposition to settle a debt made by defendant in attachment for a debt not due, before the levy, in an action for maliciously suing out an attachment, may be received in evidence.

[4.] Parol evidence of an order for sale of perishable goods attached admissible when the office of the Clerk of the Court to which the attachment was returnable is searched and it cannot be found on record or of file.

[5.] Evidence of the value of a stock of goods in the fall before an attachment was levied—the levy being in May, is not receivable as evidence, or as a criterion of value at that time.

[6.] In actions for a malicious suit, all evidence is admissible which tends on the one hand to prove the want of probable cause for the suit, and on the other to prove its existence.

[7.] Proposition by one of the defendants who had actually left the State, made after the attachment had been levied, to secure the debt, is not admissible in such an action.

Case, in Muscogee. Tried before Judge WORRILL, May Term, 1857.

This was an action on the case, by Birdsong & Sledge, late partners in a mercantile business in the City of Columbus, against Peter McLaren, for suing out an attachment maliciously and without probable cause against plaintiffs, whereby their goods and merchandise were levied on by the Sheriff and sold, at a great loss and sacrifice, and the business of plaintiffs broken up and destroyed:—damages laid at ten thousand dollars.

The defendant pleaded—first, the general issue; second, a special plea, that Birdsong & Sledge were indebted to him $489,55, and that he was informed, and believed, that Sledge,

one of said firm, had secretely removed his property and part of the goods of Birdsong & Sledge to Alabama, and the residue of their goods was then being boxed up to be removed to Alabama, and that Sledge was then in Alabama for the purpose of receiving and disposing of the same, and so believing, defendant, under the advice of counsel, caused the attachment to be issued, and denies that the same was sued out by him maliciously, but that he had probable cause and that he is ready to verify, &c.

The case came on to be tried on the appeal, and after the jury was stricken and while the plaintiff's counsel was opening his case to the jury, prior to the introduction of any testimony, Mr. Pettitt, one of the jurors, left the jury box and went to the Judge on the bench, and stated to him that he had been in the employ of one of the parties, (McLaren,) and had prejudices which he feared would disable him from giving an impartial verdict. The Judge called up to him the counsel on both sides and informed them of the communication which the juror had made to him. The defendant's counsel moved to examine the juror as to his competency, and while this motion was being discussed the juror rose in his seat and said "I have been in the employ of McLaren and am afraid I cannot do him justice." Defendant's counsel then moved that the juror be set aside. The Court held him to be a competent juror and ordered the trial to proceed, to which ruling defendant excepted.

Defendant then moved that plaintiffs be compelled to demur or take issue on the pleas filed by him. The Court overruled the motion and defendant excepted.

In the progress of the trial plaintiff proposed to prove by a witness, (A. S. Rutherford,) that prior to the levy of the attachment, Birdsong offered to secure McLaren by delivering to him goods—defendant objected to this testimony.

The Court overruled the objection, allowed the witness to answer, and defendant excepted.

Plaintiffs then proposed to prove by the same witness, (Rutherford,) who was the Sheriff at the time, that the goods attached were sold by order of Court. Defendant objected to the witness proving the contents of an order of the Court. The Court overruled the objection, and the witness testified that the goods were sold by an order of Court, obtained at his instance, and defendant excepted.

Plaintiffs then proved by a witness, (Cowdrey,) the value of their stock of goods the fall previous to the levy under the attachment. The defendant objected to this evidence and moved to exclude it. The objection was overruled, and defendant excepted.

Defendant objected to so much of the testimony of John R. Hull, (introduced by plaintiffs,) as related to propositions to settle, made by Birdsong to McLaren or by McLaren to Birdsong, before or after the issuing of the attachment. The Courrt overruled the objection, and defendant excepted.

Upon cross-examination, defendant proposed to prove by Hull, that the whiskey for which plaintiffs owed defendant, had been sold at a very low rate, and that shortly before the attachment was taken out, defendant was so friendly with Birdsong & Sledge, that he offered, when he went to New Orleans, to buy Western produce for them at a low commission. Plaintiffs objected to this proof—the Court sustained the objection and excluded the testimony, and defendant excepted.

Plaintiffs then read the depositions of Baker and Lewis, and to so much of their answers as prove or go to show propositions made by Sledge to McLaren after the attachment was levied, defendant objected. The Court overruled the objection, and defendant excepted.

Plaintiffs then read the depositions of B. F. Reid. To

the latter part of the answer to third interrogatory, defendant objected. The Court overruled the objection, and defendant excepted.

The answer of Reid to third interrogatory, was, that he was acquainted with the stock of goods of plaintiffs, on the 5th of May, 1848, and supposed the whole stock to have been worth six thousand dollars. (The attachment was sued out and levied 5th May, 1848.)

Defendant also objected to so much of Reid's depositions as showed propositions of Birdsong to McLaren to turn over goods to secure his debt. The Court overruled the objection, and defendant excepted.

The plaintiffs having closed and defendant introducing no testimony, the Court, after argument, amongst other things, charged the jury, that unless, from the evidence, they believed that the attachment was maliciously sued out to vex and harrass the plaintiffs, they could not recover.

The jury found for the plaintiffs three thousand two hundred and fifty dollars. Whereupon, the defendant moved for a new trial, setting out as grounds therefor, all the rulings and decisions above excepted to, and also because the verdict was contrary to, and against the weight of evidence, and contrary to law and the charge of the Court. The Court refused the motion for a new trial, and defendant excepted.

HOLT; MOSES; and WELLBORN, JOHNSON & SLOAN, for plaintiffs in error.

DOUGHERTY, contra.

By the Court.—McDONALD J. delivering the opinion.

The counsel for plaintiff in error moved in the Court below, for a new trial on the several grounds of exception

made by him to the rulings and decisions of the presiding Judge during the progress of the trial, and because the verdict of the jury was contrary to and against the weight of evidence, and because it was contrary to law and the charge of the Court.

[1.] We think the Court below erred in deciding, that M. M. Pettitt was a competent juror. The counsel for defendant below, proposed to swear him as to his competence, when the juror rose from his seat and said that he "had been employed by McLaren and was afraid he could not do him justice." The Court without further examination pronounced him a competent juror. He certainly had a prejudice or bias resting on his mind against the defendant, and it is as important in civil as in criminal cases that the rights of the parties should be determined by impartial jurors.

Jurors on both the civil and criminal side of the Court, must be "*omni exceptione majores.*" It is not just that a suitor's cause should be submitted for trial to his personal enemy, or one who will allow his prejudices to control him.

[2.] Special pleadings are prohibited by the laws of this State. The defendant must make his answer, which may contain as many several matters as the defendant may think necessary for his defence. They may be inconsistent or contradictory, and the defendant's answer to the plaintiff's petition shall be sufficient to carry the cause to the jury without a replication or other proceeding. *Cobb*, 486, 488. If a plea in abatement be filed, it may be replied to, and the usual course under the English practice pursued in relation thereto; but what are termed issuable pleas, go to the jury as defences to the action, and make the issue on the petition, and are to be tried in that way, without a distinct issue thereon.

[3.] The testimony of the witness, Rutherford, as to the proposition made by plaintiff to settle by delivering goods to the defendant, was admissible evidence to the jury. The question is as to its admissibility, and not as to its effect. It

is certainly admissible, and when in connection with other circumstances in proof, as having some influence in establishing the *quo animo*, with which the attachment was issued, although, the proposition was not made until after the attachment had been issued but before the levy.

[4.] By the same witness the plaintiff proved that there was an order passed by the proper Court to sell the attached goods. The testimony was properly received. The attachment was returnable to the Inferior Court, and the presumption is that the order to sell was passed by that Court, and if returned, that it was returned to the office of the Clerk of that Court. The records and files of the Inferior Court were searched for the order and it could not be found. There was an appeal to the Superior Court and a partial search was made for it, in the Clerk's office of that Court and it was not found there. It was not a paper, or file, however, which the Clerk of the Inferior Court should have transmitted with the appeal.

[5.] The testimony of Cowdrey as to the value of the stock of goods in the fall previous to the levy of the attachment, ought not to have been admitted by the Court. It could not elucidate the issue, and could form no criterion, from which a judgment of the value of the same stock in the May afterwards could be formed.

[6.] The evidence given by Hull, in regard to the propositions made by Birdsong, to settle the debt prior to and after the issuing of the attachment, were admissible in evidence. The parts of the evidence must be considered as making a whole, and the entire evidence of the plaintiff, after proof of the issuing of the attachment, must be considered as directed to the establishment of the want of probable cause for the issuing of it. Every fact or circumstance tending to prove, on the one hand, that there was no necessity for the issuing of the attachment, and a motive operating upon the plaintiff in attachment, other than a purpose to secure or collect his debt, may be given in

evidence to establish the want of probable cause for issuing the attachment; as that the stock of goods had not been removed; that no attempt had been made to remove them; that one of the defendants was there, openly and in a condition that the ordinary process of law might have been served upon him and that bail might have been required of him. *Cobb*, 483. That before the attachment was issued, before the debt became due, a proposition was made to deliver goods to the plaintiff in payment, or to be sold at auction until paid, and the rejection by the plaintiff of the proposition, and similar offers and rejections after the issuing of the attachment. On the other hand, the plaintiff in attachment may offer in rebuttal, facts and circumstances to counteract the force and effect of the proof against him; as that one of the defendants had actually removed from the State and carried his individual moveable property; that, before he issued the attachment, he sought the best professional advice, stating fully all the facts of his case, and that he pursued the advice when it was obtained, &c. We must not be understood as holding that a creditor is to be condemned for rejecting any proposition made by his debtor, which others might deem reasonable and just, and which they, if in his place, would probably have accepted. He has a right in ordinary cases to refuse absolutely, without assigning a reason. But a legal contract between debtor and creditor, is the law of both. The creditor has no right to demand his debt until it becomes due. That is his bargain. The debtor has no right to remove his property and himself beyond the jurisdiction of the State, before the debt is due, to imperil its collection. That is his bargain. If he do, or he be in the act of doing it, so that his person cannot be arrested, to be amenable to the ordinary process of law, then his property may be attached; but if he be in the act of removing with his property, but the ordinary process of law may be served upon him, the debt not being due, the creditor may require bail of him. The right and

obligation are mutual and the law affords stringent remedies to secure the right and enforce the obligation. If the debtor subjects himself to the operation of the remedy, it is his voluntary act and he ought not to complain, if it be pursued in the terms of the law. The creditor must be assured that his debtor has subjected himself to this rigorous process, before he resorts to it—for if he uses it without the existence of probable cause for doing so, the law imputes to him a motive of oppression and wrong, for which his debtor has a remedy. If he uses a more stringent remedy, which tends to the great damage of the debtor, when he is only entitled to a less injurious remedy, and he adopts it intentionally and for the purpose of wrong, it is a matter to be weighed and considered in the case. Hence, the testimony must be regarded by the Court as tending to establish, on the one hand, the absence of probable cause, and, on the other, its existence, and it is admissible or inadmissible as it tends to prove the issue.

If the proposition of McLaren to purchase produce at *low commissions*, was, as we interpret in *this relation*, to purchase at lower commissions than others, so as to show that it could proceed from motives of personal kindness to the plaintiffs, it ought to have been admitted as tending to repel the inference of malice in suing out the attachment.

[7.] The proposition made by Sledge, who had removed from the State and was residing in Alabama, to secure the debt, and made after the attachment had been levied, ought not to have been received.

We think the testimony of Reid as to the value of the goods, he having been clerk and conversant with the business, was admissible; and also his evidence as to the proposition of Birdsong, made to McLaren, to turn over goods to settle his debt.

As the case goes back for trial, we pass no judgment upon the verdict rendered in the cause, whether it be against

the weight of evidence or contrary to the charge of the Court.

Judgment reversed.